IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GLENN GOODWIN, <br><br> Plaintiffs, <br><br> v. <br><br> FAST FOOD ENTERPRISES #3, LLP, *et al.*, <br><br> Defendants. | C.A. No. 10-23 Erie <br> District Judge McLaughlin |

## MEMORANDUM OPINION

McLAUGHLIN, SEAN J., J.

This matter is before the Court upon a Motion for Summary Judgment and a Supplemental Motion for Summary Judgment each filed by Defendant Fast Food Enterprises #3 ("Defendant"). For the reasons which follow, Defendant's Motion for Summary Judgment will be denied.

### I. BACKGROUND

On November 14, 2008, Plaintiff Glenn Goodwin ("Plaintiff") stopped to eat at a Burger King restaurant identified as restaurant number 10423, located at 6360 Sterrettania Road, in Fairview, Pennsylvania. (Goodwin Depo., pp. 21-22). Goodwin, an African-American truck driver who resides in Cleveland, Ohio, was returning to Cleveland from a delivery in Erie, Pennsylvania when he decided to stop at the Burger King for dinner. (Goodwin Depo., pp. 4, 7, 21-23). Upon entering the restaurant, Goodwin observed "chaos" and "horseplay" behind the restaurant counter and a high

1

level of noise. (Goodwin Depo., pp. 32-33, 37). Goodwin also observed that he was the only African-American in the restaurant. (Goodwin Depo., p. 50).

After placing his order, Goodwin observed a female employee make his sandwich, wrap it and place it in a metal chute. (Goodwin Depo., pp. 38). Goodwin testified that another male employee then removed his sandwich from the chute and turned his back to Goodwin, shielding the sandwich from his view. (Goodwin Depo., pp. 41-43). Goodwin further testified that the manager of the restaurant then walked over to the male employee, further blocking Goodwin's view, and then "put his arms above his head as if he's resting his self against the window, and he says, 'Nice.'" (Goodwin Depo., p. 43). Thereafter, the sandwich was returned to the chute, placed in a bag by the manager, and handed to Goodwin. (Goodwin Depo., p. 43).

Goodwin left the restaurant and proceeded to his truck, where he unwrapped his sandwich and took a bite. (Goodwin Depo., pp. 47-48). He testified that he immediately "could smell someone's breath in it" and that it seemed "extra wet." (Goodwin Depo., pp. 48-49). He concluded that someone must have spit in his sandwich. (Goodwin Depo., p. 49). Goodwin returned to the restaurant, complained to the manager, and then phoned the Pennsylvania State Police. (Goodwin Depo., pp. 49-52). A state trooper arrived shortly thereafter and filled out an incident report and collected the sandwich. (Goodwin Depo., pp. 55-59). Subsequent testing by the State Police indicated the presence of saliva on the sandwich, but no DNA testing was done to determine the identity of the person whose saliva was on the burger. (State Police Forensic Report, Doc. 46-1; Goodwin Depo., pp. 60, 66). The burger was discarded by the State Police before it could be tested further.

Goodwin acknowledged that he did not hear any comments of a racial or derogatory nature while he was in the restaurant. (Goodwin Depo., pp. 34-35, 45). However, Goodwin also testified that he observed approximately ten other people dining

2

in the restaurant when he entered, all of whom were Caucasian. (Goodwin Depo., pp. 26, 50). He also indicated that he observed an elderly Caucasian couple place an order and receive their food immediately prior to placing his own order. (Goodwin Depo., pp. 26, 35). There was no indication that any of the other patrons voiced complaints about their food.

## II. STANDARD FOR REVIEW

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment shall be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. See Fed. R. Civ. P. 56(c); Krouse v. American Sterilizer Company, 126 F.3d 494, 500 n.2 (3rd Cir. 1997). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3rd Cir. 1990). Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v.

3

First Fidelity Bancorporation, 912 F.2d 654, 657 (3rd Cir. 1990) (quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990)).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. Company v. Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3rd Cir. 1989) (the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will affect the outcome of the case under applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegations or suspicions." Firemen's Ins. Company of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3rd Cir. 1982). Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 247-249.

### III. ANALYSIS

A.  42 U.S.C. § 1981

Count One of Plaintiff's Complaint alleges a violation of 42 U.S.C. § 1981 which, *inter alia*, prohibits racial discrimination in the making and enforcement of contracts by

4

providing that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Section 1981 has been applied to discrimination that arises in the context of restaurant service "on the basis that general contract principles apply when a customer orders food in a restaurant." Billy Beru, 2009 WL 1099182 at *3. As explained by one district court:

> [A] restaurant which opens itself to the public, offering food at set prices, is making an offer. A customer who enters a restaurant and orders such food is accepting the offer, and thus forming a contract. Upon eating the food and paying consideration for it, the customer effectively terminates the contractual relationship.

Charity v. Denny's, Inc., 1999 WL 544687 (E.D. La. 1999) (cited by Billy Beru, 2009 WL 1099182 at *3). The contractual obligations which are owed to a customer seeking service at a restaurant include seating the customer, taking their order, providing them with utensils and edible food, and providing "an atmosphere which a reasonable person would expect in the chosen place." Charity, 1999 WL 544687; Gilyard v. Northlake Foods, 367 F.Supp.2d 1008, 1014 (E.D. Va. 2005) (noting that a restaurant's contractual obligations included seating customers, taking their orders, and filling their orders with edible food); Billy Beru, 2009 WL 1099182.

Section 1981 claims are analyzed utilizing the familiar three-step McDonnell Douglass burden-shifting framework. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). In the context of a Section 1981 claim based upon discriminatory interference with a contract, a plaintiff must first establish a *prima facie* case of discrimination by demonstrating: (1) that he or she is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) a failure to perform a contractual obligation as a result of that discriminatory intent. See Solomon v. Waffle

House, 365 F.Supp.2d 1312, 1321 (N.D. Ga. 2004) (citing General Bldg. Contractors Ass'n. v. Pennsylvania, 458 U.S. 375, 391 (1982)); O'Haro v. Bob Evans Farms, 2010 WL 4942219, *5-6 (M.D. Pa. 2010); Paschal v. Billy Beru, 2009 WL 1099182, *3 (W.D. Pa. 2009). If the plaintiff is successful in establishing a *prima facie* case of discrimination, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for the termination. Shaner v. Synthes, 204 F.2d 494, 500 (3rd Cir. 2000). Once the defendant has articulated a legitimate, nondiscriminatory reason, the plaintiff must prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but a pretext for discrimination. Id. at 501.

*1. Plaintiff's Prima Facie Case*

Guided by the aforementioned principles, I conclude that Plaintiff has established the requisite elements of a *prima facie* case of discrimination. It is undisputed that Goodwin, an African-American, is a member of a protected class.

With respect to the second element of a Section 1981 claim, intent to discriminate on the basis of race, Defendants contend that Plaintiff cannot point to any evidence that his race was the reason that he received a sandwich allegedly filled with spit.[1] Specifically, Defendants note that Plaintiff admits that he did not hear any comments of a racial or derogatory nature while he was in the restaurant. However, courts have acknowledged that "in light of the clear illegality of outright refusal to serve, a restaurant which wishes to discourage minority customers must resort to more subtle efforts to dissuade." Solomon, 365 F.Supp.2d at 1324; see also Laroch v. Denny's,

---

1  Defendants vigorously deny that any employee spat into Plaintiff's sandwich. However, Plaintiff's testimony is sufficient to raise a triable issue of fact as to whether the event occurred. (State Police Forensic Report, Doc. 46-1; Goodwin Depo., pp. 48-49, 60, 66).

Inc., 62 F.Supp.2d 1375, 1384 (S.D. Fla. 1999) ("Discrimination is often simply masked in subtle forms and it is always easier to assume a less odious intention to what is in reality discriminatory behavior."); Brooks v. Collis Foods, 365 F.Supp.2d 1342, 1356-57 (N.D. Ga. 2005) ("[A] restaurant and its employees may not evade liability under §1981 because the defendant has devised creative means to harass and intimidate customers."). Accordingly, courts have recognized that an inference of racial discrimination can be drawn where a minority plaintiff is treated differently than similarly situated non-minority patrons. In O'Haro, for example, the minority plaintiffs alleged that a restaurant seated them in an area where they were segregated from white patrons and "failed to serve plaintiffs, despite Caucasian customers who entered after plaintiffs receiving service." O'Haro, 2010 WL 4942219 at *7-8. The court held that this circumstantial evidence that plaintiffs were treated differently than non-minority patrons was sufficient to support an inference of discriminatory intent:

> [Plaintiffs] were the only members of a minority racial group in defendant's restaurant, they were seated in an otherwise unoccupied area of the restaurant, and they observed other white customers - who arrived after they did - being served before they could even place an order. Plaintiff Pinnock testified to making eye contact with host Brown while waiting for service, and yet still received no attention from any server until (at least according to server Hollowell's testimony) Pinnock left the table and specifically asked why, after half an hour, their orders had yet to be taken. Cf. Bobbitt v. Rage, Inc., 19 F.Supp.2d 512, 517-18 (W.D.N.C.1998) (finding "racially discriminatory animus" upon allegations of refusal of service and denial of food).

Id. Similarly, in Brooks, plaintiffs alleged that restaurant employees "greeted white customers when they entered the restaurant but did not greet Plaintiffs, the only African-Americans in the restaurant," and that plaintiffs were seated at a counter instead

7

of a requested booth "so that white customers could be seated in the booth." Brooks, 365 F.Supp.2d at 1358. Because the plaintiffs allegedly "were denied benefits as compared to white customers," the court concluded that the plaintiffs had stated a *prima facie* case of discrimination. Id. See also Solomon, 365 F.Supp.2d at 1325 (finding a *prima facie* case of discrimination where white and black patrons sat down at the same time at adjacent tables, but only the white patrons were provided with service and food in a timely manner); Gilyard, 367 F.Supp.2d at 1014-15 (inference of discrimination exists where a restaurant served a plate of fly-infested grits to a member of the only African-American group in the restaurant).

As in each of the cases cited above, Goodwin testified at deposition that he was the only African-American person dining at Burger King at the time that he received his tainted sandwich:

> Q: [W]hat makes you believe or made you believe that this was racially motivated?
>
> A: Well, I mean, just due to the fact that – I mean, I don't know, but I don't think there were any other incidents there that day, I mean, and I was there for two hours and I hadn't saw another black person come or go, and I was the only one standing there in the parking lot with an issue like that, so, and it just didn't appear to be a Burger King that was frequented by black people.
>
> Q: How do you know that?
>
> A: Well, I don't, but, you know, I'm standing there for two hours and not seeing another black person. I mean, that kind of gives you a pretty good indication of the diversity of a place.

(Goodwin Depo., pp. 50-51). Moreover, it is axiomatic that a restaurant which presents

8

a sandwich to a customer that has been spat into has failed to satisfy the restaurant's fundamental contractual obligation to provide the customer with edible food.  See, e.g., Gilyard, 367 F.Supp.2d at 1011-12 (concluding that defendant had failed to satisfy its contractual obligation when it allegedly served a fly-infested plate of grits to an African-American patron); Charity, 1999 WL 544687 (stating that a restaurant is contractually obligated to provide a paying customer with, *inter alia*, "edible food").

In sum, there is evidence from which a reasonable jury could conclude that Caucasian customers at the Burger King restaurant received satisfactory food service while Plaintiff, the only minority person in the restaurant, did not.  See Gilyard, 367 F.Supp.2d at 1014 ("[T]he Court finds that it is reasonable to infer from the continued presence of other customers that they did not receive grits or other food in the fly-infested condition alleged by Plaintiffs.").  In light of these factual allegations, I conclude that Plaintiff has satisfied the final element of his *prima facie* case.

### 2. *Defendants' Legitimate, Nondiscriminatory Reason*

Once a plaintiff has established a *prima facie* case of discrimination, the burden shifts to the defendant to articulate "'some legitimate, nondiscriminatory reasons" for the allegedly discriminatory action and to produce some evidence in support of that reason. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253-54 (1981).  The defendant's proffered explanation "must be legally sufficient to justify a judgment for the defendant" and must "frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext."  Id. at 255-56.

Defendants primarily argue that no employee spat in Plaintiff's sandwich.

Alternatively, they contend that, if the event occurred, "while not admirable," it was "not intended as discriminatory." (Defendants' Reply Brief, p. 9). In this regard, Defendants state:

> While certainly the behavior, if it occurred would be immature, it is not discriminatory here. By the Plaintiff's own admission, he saw horseplay among the Burger King employees immediately upon entering the Burger King restaurant. Specifically, he noticed a significant amount of noise and saw "somebody was snapping a towel on somebody else, and just horseplay." See Plaintiff's Deposition Transcript at 33. If it is determined the plaintiff's sandwich was spit upon by a Fast Food Enterprises #3 employee, the reason this event occurred is due to immature conduct with no racial motivation.

(Defendants' Reply Brief, p. 9).

As previously noted, I find that there is a material issue of fact as to whether an employee spat in Plaintiff's sandwich. Similarly, if a jury were to conclude that the incident occurred, it will be for the jury to determine, based upon all of the circumstances, whether the act was motivated by discriminatory animus or immature horseplay, as Defendants posit. See Metzger v. Osbeck, 841 F.2d 518, 521 (3rd Cir. 1988) ("[A] court should be reluctant to grant a motion for summary judgment when resolution of the dispositive issue requires a determination of state of mind, for in such cases much depends upon the credibility of witnesses testifying as to their own states of mind, and assessing credibility is a delicate matter best left to the fact finder.").

### B. 42 U.S.C. §2000a et seq.

Count Two of Plaintiff's Complaint alleges that Defendants violated 42 U.S.C. §2000a which states in pertinent part that "[a]ll persons shall be entitled to the full and

equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without discrimination or segregation on the ground of race, color, religion, or natural origin." 42 U.S.C. §2000a(c). It is well recognized that "[t]he same *prima facie* test as applies in §1981 cases applies to claims under §2000a." Eddy v. Waffle House, 335 F.Supp.2d 693, 701-02 (D. S.C. 2004) (quoting Charity, 1999 WL 544687 at *5) (citing McDonnell Douglas, 411 U.S. at 792). Consequently, Defendants' Motion for Summary Judgment is denied as to Plaintiff's Section 2000a claim for the same reasons that precluded summary judgment as to Plaintiff's Section 1981 claim.[2]

C. Spoliation of Evidence

Defendant alternatively moves for summary judgment on the basis that Plaintiff failed to preserve the critical piece of evidence at issue in this case, the sandwich that allegedly contained spit. In determining whether a sanction is merited when critical evidence is destroyed, courts are advised to consider: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." Schmid v. Milwaukee Elec. Tool Corp., 13 F.3d 76, 79 (3rd Cir. 1994). Potential sanctions include "the outright dismissal

---

2   Count Three and Count Four of Plaintiff's Complaint attempted to state claims for Negligent Hiring/Retention and for Civil Conspiracy. However, in his Brief in Opposition to Defendants' Motion for Summary Judgment, Plaintiff withdrew each of those claims.

of claims, the exclusion of countervailing evidence, or a jury instruction on the 'spoliation inference.'" Bowman v. American Med. Systems, Inc., 1998 WL 721079, *3-4 (citing Schmid, 13 F.3d at 78).

Here, I find no basis to dismiss this action or impose a lesser sanction on the basis of spoliation because the record indicates that Plaintiff was not culpable in the destruction of the evidence. The undisputed facts demonstrate that it was the State Police, rather than Plaintiff, who physically disposed of the sandwich. Further, at the time that the sandwich was in the custody of the police, it was equally available to all parties. No remedial or deterrent function would be served by punishing Plaintiff for an unaffiliated third party's destruction of evidence. Finally, I conclude that Defendants have not been unduly prejudiced because they will still be able to present evidence at trial in support of their claim that the incident did not occur or, alternatively, that it was not motivated by discriminatory animus.

## IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is denied. Defendants' Supplemental Motion for Summary Judgment is also denied.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GLENN GOODWIN, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>FAST FOOD ENTERPRISES #3, LLP, *et al.*, )<br>)<br>Defendants. )<br>)<br>) | C.A. No. 10-23 Erie<br>District Judge McLaughlin |

## **ORDER**

AND NOW, this 22nd day of July, 2011, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment is denied. Defendant's Supplemental Motion for Summary Judgment is also denied.

                                                      /s/ Sean J. McLaughlin
                                                      United States District Judge

cm: All parties of record. ___