**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

GLENN GOODWIN,                          )
                                        )
                    Plaintiffs,         )
          v.                            )          C.A. No. 10-23 Erie
                                        )          District Judge McLaughlin
FAST FOOD ENTERPRISES #3, LLP, *et al.*, )
                                        )
                    Defendants.         )
                                        )
                                        )

## <u>MEMORANDUM OPINION</u>

McLAUGHLIN, SEAN J., J.


          This matter is before the Court upon Defendant Fast Food Enterprises #3, LLP's ("Fast Food Enterprises") Motion for Summary Judgment.  For the reasons which follow, Fast Food Enterprises's Motion for Summary Judgment will be denied.


### I.    BACKGROUND

          Plaintiff Glenn Goodwin ("Goodwin") is an African-American truck driver who resides in Cleveland, Ohio.  Fast Food Enterprises is a franchisee of Burger King Corporation and the owner and operator of a Burger King fast food restaurant identified as restaurant number 10423, located at 6360 Sterrettania Road, in Fairview, Pennsylvania.  (Goodwin Depo., pp. 21-22).

          On November 14, 2008, Goodwin was returning to Cleveland from a delivery in Erie, Pennsylvania when he decided to stop at the Sterrettania Road Burger King location for dinner.  (Goodwin Depo., pp. 4, 7, 21-23).  While waiting for his order, Goodwin testified that he observed a male employee pick up his sandwich and turn his

back to him, shielding the sandwich from his view.   (Goodwin Depo., pp. 41-43).

Goodwin also testified that the manager of the restaurant walked over to the male

employee, further blocking Goodwin's view, and then "put his arms above his head as if

he's resting his self against the window, and he says, 'Nice.'"   (Goodwin Depo., p. 43).

When he finally received his sandwich, Goodwin testified that he "could smell

someone's breath in it" and that it seemed "extra wet." (Goodwin Depo., pp. 48-49).

He concluded that someone must have spit in his sandwich.   (Goodwin Depo., p. 49).

Goodwin also noted that all of the other customers dining in the restaurant were

Caucasian and that none of them appeared to have received adulterated food.

(Goodwin Depo., pp. 26, 50).   Based on this incident, Goodwin filed the instant lawsuit

alleging violations of 42 U.S.C. § 1981 and 42 U.S.C. § 2000a.

On December 3, 2010, Fast Food Enterprises filed a motion for summary

judgment asserting, *inter alia*, that Goodwin had not produced sufficient evidence to

support an inference that any discriminatory conduct attributed to Fast Food Enterprises

was racially motivated.   On July 22, 2011, this Court entered a memorandum opinion

and order denying Fast Food Enterprises's summary judgment motion after concluding

that there were triable issues of material fact concerning whether Goodwin's sandwich

had been spat into and whether the incident, if it occurred, was racially motivated.

In the instant Motion for Summary Judgment, Fast Food Enterprises asserts

that Goodwin cannot establish that Fast Food Enterprises, a corporate entity, is liable

for the allegedly discriminatory actions of the employees at the Sterrettania Road

Burger King.   Fast Food Enterprises also contends that Goodwin's request for punitive

damages must be stricken.   This motion is ripe for review.


## II.  STANDARD FOR REVIEW

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment shall be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."   Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial.   If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact.   See Fed. R. Civ. P. 56(c); Krouse v. American Sterilizer Company, 126 F.3d 494, 500 n.2 (3rd Cir. 1997). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims.   Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3rd Cir. 1990).   Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'"   Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3rd Cir. 1990) (quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990)).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial.   Matsushita Elec. Indus. Company v. Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3rd Cir. 1989) (the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment).   The non-moving party

3

must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim.   Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will affect the outcome of the case under applicable law.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegations or suspicions."   Firemen's Ins. Company of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3rd Cir. 1982).   Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party.   Anderson, 477 U.S. at 247-249.

### III.   ANALYSIS

Count One of Goodwin's Complaint alleges a violation of 42 U.S.C. § 1981 which, *inter alia*, prohibits racial discrimination in the making and enforcement of contracts by providing that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."   42 U.S.C. § 1981(a).   Section 1981 has been applied to discrimination that arises in the context of restaurant service "on the basis that general contract principles apply when a customer orders food in a restaurant."   Paschal v. Billy Beru, 2009 WL 1099182, *3 (W.D. Pa. 2009).   Count Two alleges that Fast Food Enterprises violated 42 U.S.C. §2000a ("Title II") which states in pertinent part that "[a]ll persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation . . . without

discrimination or segregation on the ground of race, color, religion, or natural origin." 42 U.S.C. §2000a(c).

The first issue raised in the instant summary judgment motion concerns whether Fast Food Enterprises, the corporate entity that operates the Sterrettania Road Burger King, can be held vicariously liable for the alleged misconduct of its employees. In its motion, Fast Food Enterprises contends that Goodwin has failed to establish that Fast Food Enterprises had any direct role in the alleged misconduct, either by way of participating personally or by acquiescence.   Defendant cites several cases, each of which addressed claims brought pursuant to 42 U.S.C. § 1983, for the proposition that "a Defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." June v. Spano, 2005 WL 2847311 (E.D. Pa. 2005); Rode v. Dellarciprete, 845 F.2d 1195, 1197 (3rd Cir. 1988).

In Spano, for example, the alleged victim of an illegal search and seizure filed suit against the officers who had performed the search and their supervisor.   Id. at *3.   Although the supervisor had not personally participated in the search, plaintiff argued that he was nonetheless liable pursuant to the doctrine of *respondeat superior* because, as a general matter, he "supervised and controlled" the actions of the other defendants.   Id.   The court disagreed, concluding that this type of general oversight, in the absence of any actual participation, was not sufficient to establish a factual predicate for liability against the supervisor pursuant to § 1983.   Id.

Similarly, in Rode, a civilian employee of the Pennsylvania State Police brought an action pursuant to § 1983 for retaliatory harassment.   Rode, 845 F.2d at 1207. The plaintiff attempted to state claims against the Governor and Attorney General of the Commonwealth of Pennsylvania based entirely upon their general oversight responsibilities with respect to the state police.   The Third Circuit affirmed the district

court's dismissal of plaintiff's claims against those defendants, concluding that she had failed to sufficiently allege the requisite personal involvement or knowledge to sustain a civil rights action pursuant to § 1983.   Id. at 1207-08.

On the basis of Spano and Rode, Fast Food Enterprises contends that it is similarly entitled to summary judgment based upon Goodwin's failure to allege personal involvement or knowledge on the part of the corporation.   However, each of the cases cited by Fast Food Enterprises is inapposite.   Although the doctrine of *respondeat superior* does not apply to actions brought against public entities pursuant to § 1983, courts have widely acknowledged that *respondeat superior* liability is available in actions against private employers pursuant to § 1981.   See, e.g., Felton v. Polles, 315 F.3d 470, 482 (5th Cir. 2002) (noting that *respondeat superior* liability is available through § 1981 but not through § 1983); Flanagan v. Aaron E. Henry Community Health Services Center, 876 F.2d 1231,1235 (5th Cir. 1989) (concluding that the *respondeat superior* doctrine applies to actions against private employers pursuant to § 1981); Springer v. Seaman, 821 F.2d 871, 881 (1st Cir. 1987) (holding that the "doctrine of *respondeat superior* is applicable to claims brought under . . . § 1981."); Vance v. Southern Bell Telephone and Telegraph Co., 863 F.2d 1503, 1512 (11th Cir. 1989) (corporate employer may be held liable in a § 1981 claim); Mitchell v. Keith, 752 F.2d 385, 388-89 (9th Cir. 1985) (liability may be imposed on private employers under § 1981 on the basis of *respondeat superior*); Choice v. Easton Hospital, 1988 WL 132236, *1 (E.D. Pa. 1988) ("In contrast to § 1983, § 1981 allows a corporation to be held vicariously liable for the actions of its employees under the doctrine of *respondeat superior*."); Konnethu v. Harris County Hospital District, 669 F.Supp.2d 781, 790 (S.D. Texas 2009) ("Although *respondeat superior* liability may be available through § 1981, it is not available through § 1983."); Bobbitt v. Rage, 19 F.Supp.2d 512, 520 (W.D. N.C. 1998) ("The doctrine of *respondeat superior* is applicable to section 1981 claims.").   Liability against the

6

employer may be imputed either by demonstrating that the employer was aware of the alleged misconduct and failed to take action or that the employer or an authorized supervisor directly participated in the illicit act.   Vance, 863 F.2d at 1512; Flanagan, 876 F.2d at 1235.

In Rose v. The Morning Call, Inc., for example, a minority business owner alleged that various executives at The Morning Call, a local newspaper, had placed space and layout restrictions on his advertisements that they did not apply to businesses owned by his white competitors.   Rose, 1997 WL 158397,*1 (E.D. Pa. 1997).   The newspaper filed a motion to dismiss wherein it argued, inter alia, that it could not be held liable for the allegedly discriminatory conduct because the newspaper as a corporate entity had not "personally" discriminated against the plaintiff.   The district court denied the motion, stating:

> [W]e reject defendants' argument that the allegations of intentional racial discrimination against the individual defendants fail to state a § 1981 claim against The Morning Call based upon its lack of "personal involvement" in the allegedly discriminatory conduct. Permitting a § 1981 claim to proceed against The Morning Call based upon the actions of the individual defendants, who are officers and/or employees of The Morning Call, is not tantamount to imposing vicarious liability under the circumstances of this case. Since a corporation can act only through its officers and employees, liability against a corporation, with respect to any type of claim, can be asserted only by alleging that the conduct of its authorized agents was illegal. Indeed, to accept defendants' argument that plaintiff's claim must be dismissed based upon his failure to allege that The Morning Call, as a corporate entity, discriminated against plaintiff in some manner other than through the conduct of its authorized agents would amount to a determination that claims for intentional racial discrimination under § 1981 may not be asserted against a corporation.

Id. at *6.

Similarly, in Flanagan, two minority executive directors of a medical center were accused of improperly harassing and ultimately terminating the plaintiff, a white physician, on the basis of her race.   Flanagan, 876 F.2d at 1233.   In addition to suing the two offending supervisors pursuant to § 1981 and Title VII, the plaintiff sought to impose liability against the medical center for the acts of its supervisors.   Rejecting the medical center's argument that it could not be vicariously liable under § 1981 or Title VII, the Fifth Circuit concluded that, because the supervisor-defendants exercised substantial control over the day-to-day activities of the center, including the power to make employment decisions, "the doctrine of *respondeat superior* applied under § 1981 to render the employer liable for the discriminatory acts of the plaintiff's supervisors." Arguello v. Conoco, Inc., 207 F.3d 803, (5th Cir. 2000) (examining Flanagan, 876 F.2d at 1236).

In Equal Employment Opportunity Commission v. Gaddis, 733 F.2d 1373 (10th Cir. 1984), the Tenth Circuit affirmed a judgment entered against the corporate defendant, a newspaper, based upon evidence that a general manager with "hiring authority" had discriminated against the plaintiff, a minority employee, by terminating him as a result of his race.   Id. at 1380.   In reaching its conclusion, the Court held that "[a]n employer is liable under both Title VII and section 1981 'where the action complained of was that of a supervisor, authorized to hire, fire, discipline or promote, or at least to participate in or recommend such actions, even though what the supervisor is said to have done violates company policy.'"   Id. (quoting Miller v. Bank of America, 600 F.2d 211, 213 (9th Cir. 1979)).   Other courts have reached the same conclusion. See Bains v. Arco, 405 F.3d 764, 773-74 (9th Cir. 2005) (holding the defendant company vicariously liable under § 1981 for the intentional discrimination of its agent even without proof that the company itself had intentionally discriminated); Cabrera v. Jakabovitz, 24 F.3d 372, 385-89 (2nd Cir. 1994) (finding that the defendant landlords

8

were vicariously liable under § 1981 for the intentional discrimination of their rental agents); Bobbitt, 19 F.Supp.2d at 520 (allegations that the a Pizza Hut manager had discriminated against them on the basis of their race were sufficient to state a claim under § 1981 against the restaurant).

Here, as in each of the foregoing cases, Goodwin has specifically alleged that the shift manager of the Sterrettania Road Burger King, Christopher Scott, participated in the alleged discriminatory act by shielding Goodwin's vision so that another employee could spit into his sandwich. (Goodwin Depo., p. 43). Scott testified at deposition that, as a store manager, he had the authority to discipline or terminate employees working at that branch. (Appendix to Plaintiff's Response to Defendant's Third Motion for Summary Judgment, Ex. 1, Scott Deposition). Goodwin's allegation that Scott, a "supervisor, authorized to hire, fire, discipline or promote," had participated in the discriminatory conduct is sufficient to state a claim for liability against Fast Food Enterprises. See Gaddis, 733 F.3d at 1380.

Fast Food Enterprises' second argument is that Goodwin has failed to allege sufficient facts to entitle him to claim punitive damages. Punitive damages are available in a § 1981 action "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983).[1] In determining when punitive damages based upon recklessly or callously indifferent conduct by an employee can be imputed to an employer in a civil rights case, the United States Supreme Court has instructed courts to seek guidance from traditional principles of agency law. Kolstad v. American Dental Ass'n., 527 U.S. 526, 542 (1999)). In

---

[1] It is well-settled that "any case law construing the punitive damages standard set forth in [Title VII cases] is equally applicable to clarify the common law punitive damages standard with respect to a § 1981 claim." Lowery v. Circuit City Stores, Inc., 206 F.3d 431, 441 (4th Cir. 2000).

Kolstad, the Court noted that a principal is typically liable for punitive damages caused by the acts of its agent in the following four situations:

(a)   The principal authorized the doing and the manner of the act; or

(b)   The agent was unfit and the principal was reckless in employing him; or

(c)   The agent was employed in a managerial capacity and was acting in the scope of employment, or

(d)   The principal or a managerial agent of the principal ratified or approved the act.

Id. at 542-43 (quoting Restatement (Second) of Agency §217C (1957)).   However, the Court explicitly "modified one aspect of this general rule" to account for the unique purpose of Title VII.   See Alexander v. Riga, 208 F.3d 419, 433 (3rd Cir. 2000). Specifically, the Court held that, "in the punitive damages context, an employer could not be vicariously liable for the discriminatory . . . decisions of managerial agents where these decisions are contrary to the employer's 'good-faith efforts to comply with [civil rights laws].'"   Kolstad, 527 U.S. at 545 (quoting Kolstad v. American Dental Ass'n, 139 F.3d 958, 974 (D.C. Cir. 1998) (Tatel, J., dissenting)).   This "good-faith" exception "shields employers who make a bona fide effort to institute nondiscrimination policies, from the prospect of an award of punitive damages when, despite the good faith efforts of the employer to comply with the law . . . discrimination has nonetheless occurred." Copley v. BAX Global, Inc., 97 F.Supp.2d 1164, 1168 (S.D. Fla. 2000); Lowery, 206 F.3d at 441.

In its motion to dismiss, Fast Food Enterprises primarily contends that Goodwin's request for punitive damages should be stricken because the company has made "good-faith efforts" to comply with civil rights laws by training and instructing employees in proper, non-discriminatory methods of interacting with customers and by enacting a diversity policy and requiring employees to be aware of its contents.   (Brief in Support of Motion for Summary Judgment, p. 13).   Fast Food Enterprises further

avers that it had not received any previous complaints about discriminatory conduct from any of its employees at the Sterrettania Road Burger King location and that it promptly investigated and took action upon being informed of the alleged incident.   (Id. at pp. 5, 13).   However, Fast Food Enterprises has failed to file any documentation on the record to support any of these assertions.   For example, although Fast Food Enterprises cites the deposition testimony of Keith Egyed, described as the "managing director for PEC management, the parent company of Fast Food Enterprises," it has failed to supply the Court with the transcript of Egyed's testimony.   Neither has it submitted documentation of the company's alleged non-discrimination policy, either by way of deposition or affidavit, nor any testimony describing the diversity training that employees such as Scott were allegedly given prior to the incident.   It is axiomatic that statements made by counsel in legal memoranda are not evidence and cannot independently support or defeat a summary judgment motion.   See Berckeley Inv. Group, Ltd. v. Colkitt, 455 F.3d 195, 201 (3rd Cir. 2006) (noting that the summary judgment stage is "put up or shut up" time and that arguments at that stage must be based upon "facts in the record" rather than "assertions made in the pleadings, legal memoranda, or oral argument."); Jersey Cent. Power & Light Co. v. Lacey Township, 772 F.2d 1103, 1109-10 (3rd Cir. 1985)) ("Legal memoranda and oral argument are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion."); Bally's Health & Tennis Corp. v. Almaui, 1997 WL 461049, *2 (N.D. Ill.1997) (denying summary judgment in part because "the evidentiary materials [the moving party] cites in support of some of its factual assertions are not a part of the record [movant] has submitted to the court.").   In light of the undeveloped nature of the record with respect to these critical issues, summary judgment as to Goodwin's claim for punitive damages is not appropriate.

11

## IV.   CONCLUSION

For the foregoing reasons, Fast Food Enterprises' Motion for Summary Judgment is denied.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

GLENN GOODWIN,                          )
                                        )
                    Plaintiff,          )
        v.                              )          C.A. No. 10-23 Erie
                                        )          District Judge McLaughlin
FAST FOOD ENTERPRISES #3, LLP, *et al.*, )
                                        )
                    Defendants.         )
                                        )
                                        )

## ORDER

AND NOW, this 16th day of May, 2012, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment is denied.

/s/ Sean J. McLaughlin
United States District Judge

cm: All parties of record. ____